Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4061 | **DATE** | 12/19/2001 |
| **CASE TITLE** | Firstar Bank, N.A. vs. Lawrence J. Faul, etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing re-set for 1/24/2002 at 10:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendant's motion to dismiss (28-1) is granted in part and denied in part. Count VI and that part of Count V which alleges that Faul Chevrolet converted $15,499.48 are dismissed with prejudice. Count III is dismissed without prejudice and Firstar if it so chooses may file an amended Count III within 30 days of the filing of this opinion. The status hearing set for 12/21/01 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 2 0 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/19/2001 | |
| GL | courtroom deputy's initials | DEC 19 PM 2:24 | date mailed notice GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | | |
|---|---|---|
| FIRSTAR BANK, N.A., | ) | DOCKETED |
| Plaintiff, | ) ) | DEC 2 0 2001 |
| v. | ) ) ) | No. 00 C 4061 |
| LAWRENCE J. FAUL and FAUL CHEVROLET, INC. | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Plaintiff Firstar Bank, N.A. ("Firstar"), sued Lawrence J. Faul and Faul Chevrolet, Inc. ("Faul" and "Faul Chevrolet" respectively, and "Defendants" collectively), alleging breach of contract, fraud, fraudulent conveyance, and conversion and demanding an accounting. Defendants have moved to dismiss all counts in the complaint except those alleging breach of contract. For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are assumed to be true for the purpose of adjudicating Defendants' motion to dismiss. Faul Chevrolet, a corporation organized under the laws of Illinois with its principal place of business in Palatine, Illinois, is a dealer of new and used automobiles. Faul, a citizen and resident of Illinois, is the President of Faul Chevrolet and "a significant, if not majority, shareholder" in the company. Compl. ¶ 2. Firstar, a national banking association with its principal place of business in Cincinnati, Ohio, provides consumer financing for automobiles purchased from Faul Chevrolet pursuant to the terms of two contracts between them. Under the Dealer Agreement ("Dealer Agreement"), Firstar agreed to pay Faul Chevrolet upon the receipt of certain documentation relating to each sale an amount not to exceed a maximum number set forth in Firstar's Reference Materials. After Firstar received the

documentation and sent written approval to Faul Chevrolet, Faul Chevrolet was then authorized to use Firstar's blank drafts to draw the approved amount from Firstar accounts. Under the Dealer-Chattel Paper Purchase Agreement ("Chattel Agreement"), Firstar agreed to purchase from Faul Chevrolet the contracts of customers who qualified under Firstar's credit policies and Faul Chevrolet agreed to fund a Reserve Account from which Firstar could collect if a customer prepaid or defaulted his contract or asserted a defense against collection.

Firstar eventually discovered certain irregularities in transactions involving Faul Chevrolet. First, Firstar determined that Defendants, after receiving written approval from Firstar, often wrote two drafts instead of one, essentially "double-dipping" from Firstar funds. Second, Firstar discovered that Defendants had written drafts for amounts that exceeded the maximum number authorized by Firstar's Reference Materials. Third, Firstar found that Defendants had received payment for automobiles from Firstar funds without forwarding a sales contract or lease agreement for such automobiles to Firstar. Fourth, Firstar learned that Defendants had written several checks to Firstar which bounced due to insufficient funds or closed accounts. Finally, Firstar discovered that Faul Chevrolet had failed to fund the Reserve Account as required under the terms of the Chattel Agreement. Firstar calculated that it was owed nearly $500,000 as a result of these irregularities and demanded payment from Defendants. Although Defendants promised that payment would be forthcoming, no payment has been made to date. Furthermore, Faul has sold the assets and discontinued the operation of Faul Chevrolet with the intent of avoiding payment to Firstar.

On July 5, 2000, Firstar filed a six-count complaint against Defendants. Counts I and II are brought against Faul Chevrolet alone and allege that it breached the Dealer Agreement and the Chattel Agreement (collectively, the "Agreements") respectively. Firstar brings the remaining counts against both Defendants – Count III alleges that they committed fraud, Count IV alleges that they fraudulently conveyed property, Count V alleges that they converted Firstar funds, and Count VI demands an accounting. Defendants have moved to dismiss Counts III-VI for failure to state a claim upon which relief may be granted. We address their arguments below.

## ANALYSIS

A. Jurisdiction and Venue

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship, see *Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001), and the amount in controversy exceeds $75,000 exclusive of interest and costs. Venue is proper under 28 U.S.C. § 1391(a) as Defendants reside in the Northern District of Illinois. The parties agree that all counts in this suit are governed by Illinois law.

B. Standard of Review

For the purposes of a motion to dismiss, we accept all well-pled allegations as true and construe the complaint in a light most favorable to the plaintiff. M*CM Partners, Inc. v. Andrew-Bartlett & Assocs., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995). In determining the sufficiency of the complaint, we may also look to any written exhibits attached to the complaint. See Fed.R.Civ.P. 10(c); Levenstein *v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). We will dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts to support the allegations in his complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); Slaney *v. Intern. Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

C. Count III – Fraud

Firstar alleges that Defendants committed fraud. Defendants offer three arguments suggesting that Count III fails to state a claim for fraud. We address each of these arguments in turn.

### 1. Recovery in Tort for Breach of Contract

Defendants argue that Firstar cannot recover in tort against Faul for what is essentially a breach of contract claim against Faul Chevrolet. We reject this argument.

Under Illinois law, a plaintiff may recover in tort for economic losses caused by fraudulent representations. *See Cumis Ins. Soc'y, Inc. v. Peters*, 983 F.Supp. 787 (N.D.Ill. 1997). Indeed,

Defendants do not apparently dispute this point. *See* Reply Mem. at 8. Instead, they cite cases which question the extent to which the breach of a promise to perform entails fraud. *See* Mot. to Dismiss ¶ 5 (citing Desnick *v. Am. Broad. Co.*, 44 F.3d 1345, 1354 (7th Cir. 1995); Zankle *v. Queen Anne Landscaping*, 724 N.E.2d 988, 993 (Ill.App.Ct. 2 Dist. 2000); and S*mith v. Prime Cable of Chicago*, 658 N.E.2d 1325 (Ill.App.Ct. 1 Dist. 1995)). None of these cases, however, is on point. In each of these cases, the alleged fraudulent representation was the contractual promise to perform itself, e.g., a false promise of future conduct. *See Desnick*, 44 F.3d at 1354 (investigative journalists made false promises to gain entry to doctor's office); Zankle, 724 N.E.2d at 993 (landscaping contractor made false promises about nature of work they would do); S*mith*, 658 N.E.2d at 1335 (pay-per-view promoter made false promise about length of televised concert). When a complaint alleges a false promise of future conduct, "such a representation, even where made with an intention not to perform, is not actionable as fraud . . . ." S*mith*, 658 N.E.2d at 1335. In the present case, however, the alleged fraudulent representations are not the contractual promises made by Faul Chevrolet in the Dealer Agreement or Chattel Agreement; rather, Firstar claims that both Faul and Faul Chevrolet made representations beyond these contractual promises which Firstar relied upon and which turned out to be fraudulent. In such a situation, Firstar may recover in tort for economic losses caused by such fraudulent representations. *See generally Cumis*, 983 F.Supp. at 792 (holding that Illinois law permits plaintiff to bring both a breach of contract and a fraud claim).

Furthermore, Defendants claim that if Firstar is entitled to recover at all, it may only recover against Faul Chevrolet because Faul is not a party to the Agreements. The fact that only Faul Chevrolet is a party to the Agreements with Firstar, however, does not prevent recovery in fraud against Faul personally. Illinois law permits a cause of action for fraud against any party who participates in a fraud. See *Commercial Credit Equip. Corp. v. Stamps*, 920 F.2d 1361, 1366 (7th Cir. 1990) (upholding fraud claim against person who facilitated fraud by knowingly accepting forged documents); Citizen *Savings & Loan Ass'n v. Fischer*, 214 N.E.2d 612, 616 (Ill.App.Ct. 5 Dist. 1966) (holding that "whoever participates in a fraudulent act is guilty of fraud"). Therefore, Firstar may recover against Faul personally if it can show that he participated in fraudulent activity with Faul Chevrolet.

4

### 2. Failure to Allege Elements of Fraud

Defendants argue that Firstar has failed to allege all the required elements of fraud. In order to state a claim for fraud under Illinois law, a plaintiff must allege: 1) that the defendant made a false statement of material fact; 2) that the defendant knew or believed the statement to be untrue; 3) that the plaintiff had a right to rely on the statement; 4) that the plaintiff did rely on the statement; 5) that the defendant made the statement for the purpose of inducing the plaintiff to act; and 6) that plaintiff's reliance on the statement led to his injury. *Siegel v. Levy Org. Dev. Co., Inc.*, 607 N.E.2d 194, 198 (Ill. 1992). Defendants maintain that Firstar has failed to allege that either Faul or Faul Chevrolet made a false statement of material fact or that Firstar relied on any such false statement.

Firstar alleges that Defendants committed fraud in four ways: 1) by writing two drafts instead of the one authorized by Firstar; 2) by writing drafts that exceeded the maximum amount authorized by the Reference Materials; 3) by writing several checks to Firstar which bounced due to insufficient funds or closed accounts; and 4) by writing drafts without forwarding the sales or lease contracts to Firstar. *See* Compl. ¶¶ 36-40. The first three allegations (duplicate drafts, excessive drafts, and bad checks) are sufficient to state a claim for fraud, but the fourth allegation as currently drafted does not sufficiently allege fraud.

Firstar alleges that Defendants wrote duplicate and excessive drafts and bad checks with the intent to deceive Firstar and to appropriate money in breach of their legal duties. These three allegations satisfy the most basic definition of fraud: "Generally, fraud means anything intended to deceive, including all acts, omissions and concealments involving a breach of legal or equitable duty." *Gary-Wheaton Bank v. Burt*, 433 N.E.2d 315, 322 (Ill.App.Ct. 2 Dist. 1982). In each of these instances, Defendants made false representations to Firstar: when they submitted duplicate drafts, Defendants falsely represented that there were two customer transactions rather than one; when they submitted excessive drafts, Defendants falsely represented that the amount indicated was authorized by the Reference Materials; when they wrote bad checks, Defendants falsely represented that there was money in their account to cover the checks. In each of these instances, Firstar charges that Defendants

5

knew their representations were false and made them with the intention of inducing Firstar to rely upon them. Finally, in each of these instances, Firstar alleges that it reasonably relied on these representations and that its reliance caused its injury. Therefore, with regard to its first three charges, Firstar has stated a claim for fraud.

Firstar's fourth charge, however, does not state a claim for fraud. Defendants' failure to forward sales or lease contracts to Firstar as required under the terms of the Dealer Agreement, without more, does not rise to the level of fraud because Firstar has failed to allege an intent to deceive. If Firstar were to allege that Defendants wrote drafts for which no sales or lease contracts ever existed, this would constitute an allegation of an intent to deceive sufficient to state a claim for fraud.

Defendants maintain that Firstar has failed to allege that either Faul or Faul Chevrolet made a false statement of material fact or that it justifiably relied on any such false statement. With respect to the charge of duplicate drafts, Defendants point to the following excerpt from Firstar's reply memorandum:

> Every time Faul signed, or caused a draft to be signed, on behalf of Faul Chevrolet he represented that: (1) Firstar had approved the transaction through sending an approval facsimile and (2) Faul Chevrolet had completed all documents required by Firstar. In other words, under the [Dealer] Agreement, by cutting himself or Faul Chevrolet a check Faul represented that Faul Chevrolet had a legal and contractual right to that money. Faul and/or Faul Chevrolet made this misrepresentation fifteen times resulting in $426,604.61 being taken improperly from Firstar accounts.

Mem. in Opp'n at 6-7. As to the first representation, Defendants argue that it is not a misrepresentation at all – Firstar did approve each transaction, but each "draft was just submitted twice." Reply Mem. at 3. This argument is too clever by half. By submitting a draft, Defendants thereby represented that a transaction actually existed, and this is the crux of the duplicate draft allegation – Defendants essentially invented transactions that did not exist. As to the second representation, Defendants claim that Firstar could not have justifiably relied on any such purported representation because it had the contractual right to refuse payment on any draft unless proper documentation was submitted within thirty days. This is a rather bold claim – it suggests that a corporation's responsibility to monitor its accounts always prevents it from recovering payments to contractual partners which were deceptively obtained. Such a rule would give a corporation's contractual partners an incentive to cheat – a partner

would obviously profit if a corporation failed to discover the deception, and yet the partner would not be liable for fraud if the corporation did discover the deception. This proposed rule, however, ignores the reality of the modern corporation. Large corporations encounter the same bureaucratic bungling that governments do, and to require corporations to have up-to-the-minute audits of accounts would likely paralyze them. It is far more efficient to have such corporations rely on post hoc audits and fraud claims than to require the addition of more inefficient bureaucracy. We are therefore not prepared at this early stage of litigation to conclude that Firstar's reliance on Defendants' misrepresentations was unreasonable given all the relevant circumstances. See generally Newton v. Aitken, 633 N.E.2d 213, 217-18 (Ill.App.Ct. 2 Dist. 1994) (discussing standards governing reasonable reliance in fraud cases).

### 3. Failure to Plead with Particularity Required by Fed.R.Civ.P. 9(b)

Defendants next argue that Firstar has failed to plead the circumstances of the alleged fraud with the specificity required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). To satisfy the particularity requirement, a fraud claim "must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." Slaney v. Int'l Amateur Athletic Found., 244 F.3d 580, 599 n.10 (7th Cir. 2001).

Although the general nature of the alleged fraud in this case is apparent, we find that Firstar has failed to satisfy Rule 9(b) in several ways. First, we note that Count III is only five paragraphs long and simply incorporates allegations contained in Counts I and II. The Seventh Circuit has indicated, however, that an attempt to state a fraud claim by essentially incorporating the entire complaint will not generally satisfy the particularity requirement of Rule 9(b). See id. Second, Firstar does not clearly allege who made each specific misrepresentation, attributing the fraudulent activity to "Faul Chevrolet, under the direction, supervision and control of Faul" or "Faul Chevrolet and/or Faul." See, e.g., Compl. ¶¶ 37, 39. When accusing multiple defendants, however, "plaintiffs must take care to identify which

of them was responsible for the individual acts of fraud." Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994). While this requirement may be relaxed when the details of the fraud are within the defendant's exclusive knowledge, see *id.*, Firstar has not so pled here. Third, Firstar does not clearly allege when each misrepresentation was made, suggesting that an averment that "the transactions occurred during the period of the [Dealer] Agreement" is sufficient to satisfy Rule 9(b). Mem. in Opp'n at 8. Firstar is mistaken – it must allege with as much specificity as possible when the alleged misrepresentations were made. See *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (plaintiff who had access to allegedly fraudulent invoices must plead the date of each invoice). Since Firstar likely has copies of the duplicate or excessive drafts and bad checks in its business records, this should not be difficult. Finally, although the complaint reveals the general outline of Defendants' scheme, Firstar should more clearly state the exact nature of the fraudulent representations at issue in this case. For example, Firstar alleges that Defendants submitted both duplicate and excessive drafts, but the complaint does not make clear which fraudulent transactions were duplicate and which were merely excessive.

Defendants ask us to dismiss Count III with prejudice. Instead, we dismiss Count III without prejudice. If it wishes, Firstar may within 30 days attempt to amend its complaint to correct these defects.

### D. Count IV – Fraudulent Conveyance

Firstar alleges that Defendants fraudulently conveyed property in violation of Illinois' Uniform Fraudulent Transfer Act (UFTA), 740 ILCS 160/1, et *seq*, when Faul sold the assets of Faul Chevrolet to a third party with the intent of avoiding payment of debts to Firstar. Under § 5(a)(1) of UFTA,

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, dely, or defraud any creditor of the debtor.

Defendants argue that this count must be dismissed because it fails to allege that the transfer was done with the actual intent to hinder, delay, or defraud a creditor, because it fails to establish that Faul is a

debtor as defined under UFTA, and because it fails to allege that Faul transferred any of his property.[1] We reject each of these arguments.

First, after closely parsing the language of Count IV, Defendants argue that it fails to allege that they transferred property with the intent to hinder collection by Firstar. *See* Mot. to Dismiss ¶ 6. While this may be technically true, the entire tenor of Count IV nearly screams "intent to hinder collection." Firstar alleges that, after it demanded payment, Defendants promised that payment would be forthcoming, and that this promise was made with the intent that Firstar would rely on the promise and delay its collection efforts. After this promise was made, Defendants allegedly began the process of transferring assets to a third party. We find that these factual allegations sufficiently imply an allegation that Defendants transferred property with the intent to hinder collection.

Second, Defendants claim that, as a matter of law, Faul is not a debtor under UFTA and therefore cannot be held liable for fraudulent conveyance. According to the Illinois Supreme Court, in order to state a claim for fraudulent conveyance, "the factual situation must include a *debtor* who is liable on a claim to a creditor." *A.P. Properties, Inc. v. Goshinsky*, 714 N.E.2d 519, 521 (Ill. 1999) (emphasis in original). A creditor is "a person who has a claim" and a debtor is "a person who is liable on a claim." 740 ILCS 160/2(d), (f). A claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 740 ILCS 160/2(c). From these definitions, the Illinois Supreme Court infers that to state a cause of action under UFTA, "the creditor must demonstrate that the debtor owes or potentially owes a 'payment' to the creditor." *A.P. Properties*, 714 N.E.2d at 522.

Defendants maintain that the claim in question here is the alleged breach of the Agreements between Firstar and Faul Chevrolet, and since Faul is not a party to these contracts, he does not owe or potentially owe a payment to Firstar and therefore cannot be a debtor under UFTA. Mot. to Dismiss

---

[1] Because Count IV alleges actual rather than constructive fraud, we need not consider Defendants' arguments regarding the latter. *See generally McClellan v. Cantrell*, 217 F.3d 890, 894 (distinguishing between actual fraud/fraud in fact and constructive fraud/fraud in law).

9

¶ 7. If breach of contract were the only claim in this suit, Defendants might be right – Faul is not a party to the Agreements and, for whatever reason, Firstar has not asked us to pierce the corporate veil. *See In re Wallen*, 633 N.E.2d 1350, 1357 (Ill.App.Ct. 1994) (discussing elements required to pierce the corporate veil). However, as noted above, Illinois law permits a cause of action for fraud against any party who participates in a fraud, see *Citizen Savings & Loan*, 214 N.E.2d at 616, and we see no reason not to extend this rule to fraudulent conveyances. Moreover, if Firstar amends Count III such that it complies with the particularity requirement of Rule 9(b), the fraud claim against Faul would constitute a claim sufficient to make him a debtor under UFTA.

Third, Defendants contend that since Count IV charges that only the assets of Faul Chevrolet were transferred and not those of Faul himself, Firstar has failed to state a claim for fraudulent conveyance against Faul personally. Mot. to Dismiss ¶ 8. This is a clever argument, one that Firstar has completely failed to address in its response. Nonetheless, the argument is flawed. Firstar alleges that Faul owned a substantial if not majority stake in Faul Chevrolet. When Faul Chevrolet was liquidated, Faul presumably received money for his share of Faul Chevrolet's assets. Therefore, to the extent that Faul participated in the decision to liquidate Faul Chevrolet, and to the extent that this participation was motivated by an intention to hinder collection of debts against Faul Chevrolet and thereby preserve the current value of his share in the company, Faul may be held liable for the fraudulent conveyance. See Frank IX *& Sons, Inc. v. Phillipp Indus., Inc.*, 1997 WL 534509, at *6-8 (N.D.Ill. 1997) (holding shareholder of corporation personally liable for transfer of corporation's assets even in the absence of piercing of the corporate veil).

### E. Count V – Conversion

Firstar alleges that Defendants jointly converted $426,604.61 in Firstar funds by submitting duplicate drafts and that Faul Chevrolet converted an additional $15,499.48 by withdrawing funds from the Reserve Account. Defendants have moved to dismiss this count. We find that Firstar has stated a claim for conversion with respect to the duplicate drafts but not with respect to the withdrawals from the Reserve Account.

10

Conversion is an intentional, unauthorized act which deprives a person of his property. See *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985). To state a claim for conversion, a plaintiff must allege "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff of possession thereof." *St. Aubin v. Johnson*, 502 N.E.2d 360, 364 (Ill.App.Ct. 1 Dist. 1986), quoted in *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988). Money, however, is generally not recoverable under the tort of conversion unless the sum of money can be described as specific chattel. See *Eggert*, 839 F.2d at 1264 (citing Thebus, 483 N.E.2d at 1260). Money may be characterized as specific chattel if it is "a specific fund or specific money in coin or bills." Sutherland v. O'Malley, 882 F.2d 1196, 1200 (7th Cir. 1989) (citing Mid-America *Fire and Marine Ins. Co. v. Middleton*, 468 N.E.2d 1335, 1339 (Ill.App.Ct. 4 Dist. 1984)). Furthermore, "the general rule is that conversion will not lie for money represented by a general debt or obligation." Thebus, 483 N.E.2d at 1261.

Defendants argue that Firstar has failed to state a claim for conversion because the money at issue cannot be described as specific chattel and the money represents a general debt or obligation. With respect to the money allegedly acquired through duplicate transactions, these arguments do not hold. First, the money can be described as specific chattel. Although only money which is "segregated from other funds, received in a lump sum, earmarked, or otherwise identifiably distinct" can be characterized as specific chattel, 3*Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 940 (N.D.Ill. 2000), we believe that the money at issue here is in fact identifiably distinct. Firstar has specifically identified 15 duplicate transactions for which it paid Defendants $426,604.61, and this sum is neither indeterminate nor estimated – if these transactions were indeed duplicate, then Firstar will be owed this exact amount. See *Commercial Credit Equipment Corp.*, 920 F.2d at 1366 (upholding jury verdict for conversion against financing company where plaintiff had written an $82,500 check to a business partner but later discovered that the partner had fraudulently used the money to finance the purchase of an airplane); R*oderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 668 N.E.2d 1129, 1135 (Ill.App.Ct. 1 Dist. 1996) (allowing conversion claim where

11

plaintiff was owed a specific percentage of an indeterminate sum); Mid-America *Fire*, 468 N.E.2d at 1338-39 (denying conversion claim where plaintiff was owed settlement proceeds minus undetermined "reasonable costs" of effecting recovery). Moreover, courts have allowed conversion claims to proceed even though the converted money was not segregated from other funds or received in a lump sum. See Roderick, 668 N.E.2d at 1137 (allowing conversion claim even though funds were not segregated and suggesting that federal district court opinion otherwise "place[d] more importance on the segregation factor than cases decided in our own courts of review"); European *Am. Bank v. Prime Leasing Co.*, 2001 WL 563783, at *2 (N.D.Ill. May 23, 2001) (allowing conversion claim even though converted sums were received in three payments). Finally, courts have been most reluctant to allow conversion claims to proceed where the defendant essentially collects money on behalf of the plaintiff but later withholds it in violation of the terms of a contract.[2] Here, however, Firstar alleges that Defendants actually physically transferred money from Firstar to themselves, a factual situation which fits more comfortably within the traditional definition of conversion.

Second, this money does not represent a general debt. In determining whether disputed money represents a debt, Illinois courts look to whether a debtor-creditor relationship exists between the two parties; a debtor-creditor relationship exists where one party voluntarily transfers his property to another. R*oderick*, 668 N.E.2d at 1135. Although Firstar did transfer funds to Defendants, the transfer cannot be described as voluntary, for Firstar transferred these funds only because Defendants fostered the mistaken impression that they were entitled to the money. Consider this hypothetical: Jack asks to borrow Jill's bike, but he has no intention of returning it; after Jill gives Jack the bike, he refuses to

---

[2] *See, e.g., Eggert*, 839 F.2d at 1264 (denying conversion claim where defendant sold plaintiff's stamp collection at auction but later withheld payment); Sutherland *v. O'Malley*, 882 F.2d at 1200-1201 (denying conversion claim where defendant deposited proceeds from legal settlement in his account but later withheld payment to co-counsel); 3*Com*, 104 F.Supp.2d at 940 (denying conversion claim where defendant was required under contract to pay plaintiff 70% of value of scrap metal collected but later withheld payment); *Cumis*, 983 F.Supp. at 793 (denying conversion claim where defendant acted as plaintiff's collection agent but wrongfully withheld payment). B*ut see European Am. Bank v. Prime Leasing Co.*, 2001 WL 563783, at *2 (allowing conversion claim where defendant acted as plaintiff's collection agent but wrongfully withheld payment).

12

return it. Although Jill transferred the bike to Jack, this transfer can hardly be described as voluntary, and if Jack does not return the bike upon demand, he will be liable for conversion. Like Jill, Firstar transferred its property to Defendants under false pretenses and therefore may bring a conversion action if its property is not returned upon demand. Therefore, because the $426,604.61 allegedly converted through the submission of duplicate drafts is specific chattel and does not represent a general debt, Firstar has stated a claim for conversion against Defendants.

Firstar has not stated a claim for conversion, however, with respect to the $15,499.48 allegedly withdrawn by Faul Chevrolet from the Reserve Account. We note that Firstar alleges in Count II that Faul Chevrolet failed to fund the Reserve Account as required by the terms of the Chattel Agreement. In Count V, however, Firstar recharacterizes this allegation, claiming that Faul Chevrolet actually withdrew funds from the Reserve Account. Since the complaint does not indicate how Faul Chevrolet could withdraw money from this account, it is difficult to determine the exact nature of this aspect of the conversion claim. Firstar might be claiming that Faul Chevrolet somehow directly withdrew funds from the Reserve Account, but given the terms of the Chattel Agreement, this seems unlikely. See Compl. Ex. D ¶ 7. Instead, Firstar seems to be suggesting that Faul Chevrolet's failure to fund the Reserve Account amounts to a conversion of Firstar funds in that Firstar was forced to cover the deficiency. If this latter characterization is correct, then Firstar has failed to state a claim for conversion with respect to money from the Reserve Account – conversion is not a proper cause of action for failure to fund an account as required by the terms of a contract. See Thebus, 483 N.E.2d at 1260 ("an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money"). Firstar's failure to even mention this aspect of Count V in its response to Defendants' motion to dismiss suggests that it has wisely abandoned this aspect of its conversion claim.

F. Count VI – Accounting

Firstar has requested an accounting to determine the exact amount Defendants owe. In order to state a claim for accounting under Illinois law, a plaintiff must allege that he has no adequate remedy at law and one or more of the following: 1) a breach of a fiduciary duty; 2) a need for discovery; 3)

13

fraud; or 4) the existence of complex mutual accounts. *Mann v. Kemper Fin. Co., Inc.*, 618 N.E.2d 317, 327 (Ill.App.Ct. 1 Dist. 1992). "Because an accounting is an equitable remedy, a court has broad discretion to determine whether it is appropriate . . . . [and] may refuse to award [it] to a party who has an adequate remedy at law." *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985). Here there is no doubt that Firstar has an adequate remedy at law – it has viable claims for breach of contract, fraudulent conveyance, and, after appropriate amended pleadings, fraud. Furthermore, the denial of an accounting here "is of little negative consequence to plaintiff . . . as the information it seeks in the accounting claim will likely be revealed during the discovery phase of this case." *3Com*, 104 F.Supp.2d at 942. Under the circumstances, then, we find an accounting unnecessary, and we therefore dismiss Count VI.

## CONCLUSION

For the reasons set forth above, we grant in part and deny in part Defendants' motion to dismiss. Count VI and that part of Count V which alleges that Faul Chevrolet converted $15,499.48 are dismissed with prejudice. Count III is dismissed without prejudice, and Firstar if it so chooses may file an amended Count III within 30 days of the filing of this opinion. It is so ordered.

MARVIN E. ASPEN
UNITED STATES DISTRICT JUDGE

Dated 12/19/01