Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4061 | **DATE** | 2/24/2003 |
| **CASE TITLE** | Firstar Bank vs. Faul | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for partial summary judgment against Faul Chevrolet is granted [R-52-1], with respect to Counts II, III, and VI. Plaintiff's motion for partial summary judgment with respect to attorney's fees and costs is granted, but denied with respect to punitive damages in Count VI. The Court will issue a separate opinion dealing with Defendants' motion for summary judgment (R. 56-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | FEB 2 5 2003 date docketed | | |
| | Notified counsel by telephone. | | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | | |
| | Copy to judge/magistrate judge. | | | | |
| TH ✓ | courtroom deputy's initials | 03 FEB 24 PM 5:38 Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FIRSTAR BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) No. 00 C 4061 |
| | ) |
| FAUL CHEVROLET, INC., | ) |
| THE FAUL GROUP, INC., and | ) |
| LAWRENCE J. FAUL, | ) |
| | ) |
| Defendants. | ) |

DOCKETED
FEB 2 5 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Plaintiff Firstar Bank, N.A. ("Firstar") filed a six-count lawsuit against Faul Chevrolet, Inc. ("the Dealership"), The Faul Group, Inc., and Lawrence J. Faul (collectively, "Defendants"). Firstar's Amended Complaint contains several theories of recovery: piercing the corporate veil against Faul and the Faul Group (Count I); breach of contract against the Dealership, Faul, and Faul Group (Counts II & III); fraud against the Dealership, Faul, and Faul Group (Count IV); fraudulent conveyance against the Dealership and Faul (Count V); and conversion against the Dealership and Faul (Count VI). The Dealership filed counterclaims against Firstar alleging breach of contract and conversion.

Plaintiff has moved for partial summary judgment against the Dealership only. In the motion, Firstar seeks judgment against the Dealership with respect to Counts II, III and VI, as well as for attorney's fees and prejudgment interest. For the reasons stated herein, Plaintiff's motion is granted.



## LEGAL STANDARD

Summary judgment is proper when the evidence presented to the Court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

In deciding whether summary judgment is appropriate, the Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). Further, the Court accepts the non-moving party's version of any disputed facts so long as it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

# FACTUAL BACKGROUND

## I. The Parties

Firstar is a national banking association with its principal place of business in Cincinnati, Ohio. (R. 53-1, Pl.'s Statement of Facts ¶1.) Defendant Faul Chevrolet, Inc. (the "Dealership") is an Illinois corporation that was in the business of selling new and pre-owned motor vehicles. (*Id.* ¶6.) The Dealership is a wholly owned subsidiary of The Faul Group, Inc. (the "Faul Group"), which is also an Illinois corporation. (*Id.* ¶7.) The Faul Group's sole shareholder is Lawrence J. Faul ("Faul"), who is an Illinois resident. (*Id.* ¶8.)

## II. The Dealer Agreement and Dealer Payment Addendum

On March 3, 1999, the Dealership and Firstar executed a Dealer Agreement and a Dealer Payment Addendum. Under these agreements, Firstar had the right to purchase automobile retail installment sale contracts and lease contracts that the Dealership had executed with its customers. (R. 53-1, Pl.'s Statement of Facts ¶¶11, 14.) To facilitate the transactions, Firstar provided the Dealership with some of its blank draft notes. If Firstar approved of a deal, the Dealership would prepare and deposit one of the Firstar drafts for the purchase price plus any commission it earned at the time. (R. 53-1, Pl.'s Statement of Facts ¶¶22-23; R. 61-1, Def.'s Resp. to Statement of Facts ¶23.)

The Dealership had to provide Firstar with the documentation necessary to complete the purchase of the contracts and leases no more than 48 hours after the Dealership had deposited the draft. (R. 53-1, Pl.'s Statement of Facts ¶24.) If the Dealership had not provided the documents to Firstar within 30 days after it had deposited the draft, Firstar could seek a full and immediate refund from the Dealership.

3

## III. Improper Drafts, Dishonored Checks, and Withheld Payments

The parties agree that the Dealership owes at least $397,871.95 due to improper drafts and dishonored checks. Specifically, the Dealership concedes that it owes Firstar $38,324.02 because of two checks that bounced. (R. 76-1, Stipulation at 4-5.) The Dealership also admits that it owes Firstar $269,547.93 because of ten drafts it deposited in its account without Firstar approving the purchase of an underlying customer contract or lease. (*Id.* at 3.) The Dealership disputes liability – and Firstar does not seek summary judgment – on an eleventh draft for $22,979.59. (*Id.* at 4.) The parties agree that when Firstar found out about these improper drafts, it withheld payments totaling $154,092.89 from the Dealership.

## IV. The Dealer Reserve Commission And Loss of Interest Payments

The Dealership also admits that it owes Firstar money from commission refunds. Firstar paid the Dealership up-front for commissions based upon the finance charges that customers were expected to pay during the life of automobile sales contracts. (R. 53-1, Pl.'s Statement of Facts at ¶¶51, 54, 56.) If a customer paid off the principal or otherwise prematurely terminated the contract, however, Firstar would not receive the full benefit of the contemplated interest payments. (*Id.* at ¶58.) In these instances, the Dealership had to partially refund the commission. (*Id.* at ¶¶57, 60.)

Firstar typically paid the Dealership each month for the difference between the commissions owed to the dealership and the refunds owed to Firstar. (*Id.* at ¶63.) Beginning in March 2000 the refunds owed to Firstar became greater than the commissions owed to the Dealership. (*Id.* at ¶¶64-66.) Firstar provided the Dealership with a formal, written demand on June 15, 2000 for the debt based on this difference. (*Id.* at ¶66.)

The Dealership concedes that it owes Firstar for the difference in the refunds and

commissions since March 2000. (R. 76-1, Stipulation at 5.) As of April 30, 2002, the undisputed facts show the difference to be $120,928.85. (R. 53-1, Pl.'s Statement of Facts ¶67.) Although the amount the Dealership owes for these commission refunds will continue to accrue as customers pay off the principal or otherwise prematurely terminate their contracts, Firstar seeks summary judgment with respect to the $120,928.85 that was due on April 30, 2002.

## V.  Procedural History

On July 5, 2000, Firstar filed a complaint against Faul and the Dealership. Firstar added the Faul Group as part of its amended complaint on February 15, 2002. Judge Aspen presided over the case until it was transferred to this Court as part of a mass reassignment on August 30, 2002. Firstar has moved for partial summary judgment with respect to: (1) its breach of contract claim against the Dealership related to the improper drafts and the dishonored checks, (2) its breach of contract claim against the Dealership related to the commission refunds, (3) its conversion claim against the Dealership related to the improper drafts, and (4) attorney's fees, costs, and prejudgment interest against the Dealership in connection with these claims.

## ANALYSIS

### I.  Plaintiff Is Entitled To Partial Summary Judgment Against The Dealership With Respect To Count II

There is no dispute of fact or law with respect to Firstar's claim in Count II that the Dealership breached contracts with Firstar by improperly depositing draft notes into the Dealership's account and bouncing two checks that were payable to Firstar. The Dealership concedes that it breached the Dealer Agreement and the Dealer Payment Addendum when it improperly deposited ten Firstar draft notes totaling $269,547.93 into the Dealership's account. It also admits to owing

5

Firstar $38,324.02 for two dishonored checks. Firstar admits it withheld $154,092.89 to offset the Dealership's debt. As there is no dispute of fact or law, Plaintiff is entitled to partial summary judgment against the Dealership in Count II for $153,779.06, which represents the difference between the Dealership's liability for the bounced checks and the ten improperly deposited notes, and Firstar's withholding.

## II. Plaintiff Is Entitled To Partial Summary Judgment Against The Dealership With Respect To Count III

There again is no dispute of law or fact with respect to Firstar's breach of contract claim in Count III against the Dealership for failing to pay Firstar commission refunds. The Dealership admits that it breached the Dealer Agreement and Dealer Payment Addendum when it failed to pay Firstar back for the commissions that should have been partially refunded because of the loss of interest payments. The Dealership does not dispute that it owed $120,928.85 in unrealized interest payments as of April 30, 2002. As there is no dispute of fact or law, Plaintiff is entitled to partial judgment against the Dealership in the amount of $120,928.85.

## III. Plaintiff Is Entitled To Partial Summary Judgment Against The Dealership With Respect To Count VI

Plaintiff's claim for conversion in Count VI relates to the Dealership's deposit of improper drafts. While the parties have agreed on the law and facts with respect to Counts II and III, they dispute whether Firstar is entitled to summary judgment on Firstar's conversion claim. Firstar argues that the undisputed facts show that it is entitled to judgment as a matter of law.[1]

---

[1] Defendants have also filed a summary judgment motion, in which they seek, inter alia, judgment as a matter of law with respect to the conversion claim. Because the Court finds that Plaintiff is entitled to judgment as a matter of law on Count VI, Defendants' motion is moot as it pertains to conversion. The Court will issue a separate opinion regarding Defendants' entire motion for summary judgment.

## A. The Drafts are Specific Chattel

The Dealership argues as a preliminary matter that a claim for conversion is improper here because the liability associated with the improper drafts constitutes nothing more than a debt owed by the Dealership to Firstar, and that the money cannot be described as a specific chattel.[2] "[T]he general rule is that conversion will not lie for money represented by a general debt or obligation." *In re Thebus*, 483 N.E.2d 1258, 1261 (Ill. 1985). Money must be capable of being described as "specific chattel" in order for it to be the subject of a conversion action. *Id.*; *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F.Supp. 787, 793 (N.D. Ill. 1997). To be a specific chattel, a plaintiff must have a "right to a specific fund or specific money in coin or bills." *Mid-America Fire & Marine Ins. Co. v. Middleton*, 468 N.E.2d 1335, 1339 (Ill. App. Ct. 1984).

The Dealership's argument fails, however, because the Illinois legislature has explicitly stated that a claim for conversion can be maintained with respect to Firstar's drafts. "The law applicable to conversion of personal property applies to instruments." 810 ILCS 5/3-420. Further, Illinois common law recognizes the drafts to be specific chattel. Under Illinois common law, the subject of a conversion claim must be an identifiable object of property, *Cumis Ins. Soc'y*, 983 F.Supp. at 793 (citation omitted), otherwise a defendant is liable for a debt rather than for a conversion. *Sutherland v. O'Malley*, 882 F.2d 1196, 1199 (7th Cir. 1989). Here, the undisputed facts show that the subjects of Firstar's conversion claim – ten improperly written and deposited drafts – are specific chattel.

---

[2] Judge Aspen, who previously presided over the case, addressed this issue at the pleading stage. *See Firstar Bank, N.A. v. Faul*, 2001 WL 1636430, at *7-*8 (N.D. Ill. Dec. 20, 2001). In that opinion, Judge Aspen stated that "[a]lthough only money which is 'segregated from other funds, received in a lump sum, earmarked, or otherwise identifiably distinct' can be characterized as specific chattel, we believe that the money at issue here is in fact identifiably distinct." Id. (quoting *3Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 940 (N.D. Ill. 2000)). The undisputed facts show that this earlier ruling is still applicable.

They are specific, identifiable instruments. Under both Illinois statutes and common law, Firstar can maintain a claim for conversion of its drafts.

### B. The Elements of Conversion

The Dealership's next argues that there is a dispute of material fact as to whether Firstar can establish the elements for conversion of personal property. Illinois law requires a plaintiff to show that: (1) it has a right to the property; (2) it has an absolute and unconditional right to the immediate possession of the property; (3) it made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over its property. *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). The parties agree that Firstar can meet the first three elements of conversion. (R. 76-1, Stipulation at 3-4; R. 53-1, Pl.'s Statement of Facts ¶¶22, 24, 26.) The dispute is whether the undisputed facts show that the Dealership wrongfully and without authorization assumed control, dominion, or ownership over Firstar's property.

The Dealership argues that some evidence suggests that any errors with respect to the improper drafts "were purely clerical" and that "mistakes occur in the drafting process." (R. 67-1, Def.'s Resp. to Pl.'s Mot. for Summ. J. at 7-8.) The Dealership believes this evidence is pertinent because, it argues, the tort of conversion contains a wrongful intent element. This is not so. "Relief in an action for conversion may be had without establishing malice, culpability or conscious wrongdoing. . . . Thus, knowledge is not an element of the cause of action." *Douglass v. Wones*, 458 N.E.2d 514, 519 (Ill. App. Ct. 1983); see also W. Keeton, D. Dobbs, R. Keeton, & D. Owens, *Prosser and Keeton on Law of Torts* § 15, pp. 92-93 (5th ed. 1984) ("The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights. . . . A mistake of law or fact

8

is no defense.")

Even if the clerical errors were the sole cause of the deposit of each of the ten improper drafts, the Dealership was put on notice of the wrongful taking once Firstar demanded return of the funds. The Dealership's failure to return the funds after the demand satisfies the final element of conversion under Illinois law. *See Western States Ins. Co. v. Louis E. Olivero & Assocs.*, 670 N.E.2d 333, 335 (Ill. App. Ct. 1996) ("Retention of property after a valid demand for its return constitutes conversion."). Firstar is therefore entitled to judgment with respect to conversion regardless of the Dealership's intent at the time of the taking.

In a final attempt to ward off judgment on this claim, the Dealership argues that once it deposited the drafts the money became its property. Accordingly, the Dealership claims, Firstar could no longer claim a right to the drafts and its cause of action for conversion was "extinguished." (Def.'s Resp. to Mot. for Summ. J. at 9.) This argument is not convincing. One element of a claim for conversion is that a defendant wrongfully and without authorization assumed control, dominion, or ownership over plaintiff's property. If that same control, dominion, or ownership could extinguish a plaintiff's cause of action there would never be a claim for conversion. The Dealership's argument is a fallacy. Because the undisputed facts show that Firstar is entitled to judgment as a matter of law with respect to conversion, the Court enters judgment on Count VI in Firstar's favor.

### C. Punitive Damages

Plaintiff seeks an award of punitive damages with respect to conversion in Count VI. Punitive damages are appropriate when "defendants acted wantonly and wilfully . . . or were motivated in their actions by ill will, malice, or a desire to injure the plaintiffs." *Hamilton v. Svatik*,

779 F.2d 383, 389 (7th Cir. 1985) (quoting *Jeanty v. McKey & Poague, Inc.*, 496 F.2d 1119, 1121 (7th Cir. 1974)). Here, punitive damages are not appropriate at the summary judgment stage because there is an issue of material fact with respect to the Dealership's intent. Providing the Dealership with all reasonable inferences, it may be that the submission of the improper drafts was truly a clerical error. The determination of whether the Dealership was unreasonable or acted in bad faith will turn on the demeanor and credibility of witnesses. It is therefore an issue best left for trial. *See, e.g., Mark I, Inc. v. R.G. Int'l Corp.*, 1991 WL 181061, at *4 (N.D. Ill. Sept. 9, 1991). Because there is a genuine issue of material fact, Plaintiff's motion is denied with respect to punitive damages.

## IV. Firstar Is Entitled To Reasonable Attorney's Fees And Costs

Federal courts do not award attorney's fees in the absence of a statute or contract providing for a fee award. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 60, 111 S.Ct. 2123, 2141, 115 L.Ed.2d 27 (1991). Here, Firstar argues that the Dealer Agreement and the Dealer Payment Addendum allow for the award of attorney's fees. Whether to award attorney's fees based on contractual terms is a substantive area of the law. Therefore, under the *Erie* doctrine, federal courts sitting in diversity analyze the applicable state's substantive law to determine whether to award such fees. *Id.* at 74, 11 S.Ct. at 2148. Here, the parties agree that Illinois is the proper choice of law. In Illinois, attorney's fee provisions are to be construed strictly. *Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 (7th Cir. 2000) (citing *Northern Trust Co. v. Sanford*, 139 N.E. 603 (Ill. 1923)).

The Dealer Agreement and Dealer Payment Addendum governed Firstar's purchase of automobile retail sale and lease contracts from the Dealership. Paragraph 8(a) of the Dealer Agreement states:

> [S]hould Dealer fail to perform any of its obligations to [Firstar]

> under this Agreement, Dealer shall promptly pay upon receipt of [Firstar]'s demand, one or more of the following amounts . . .(3) out-of-pocket expenses paid or incurred by [Firstar] . . . including . . . attorney's fees and costs of litigation . . . whether by or against [Firstar] and expenses with regard to repossession, storing and repairing and selling the Vehicle.

(R. 53-1, Pl.'s Statement of Facts ¶18.) Additionally, according to Paragraph 1(c) of the Dealer Payment Addendum:

> [The Dealership] shall maintain good and sufficient controls with respect to all unused drafts in its possession and accepts full responsibility for and indemnifies [Firstar] against all losses or damages (including reasonable attorney's fees and expenses) arising from the improper use of a draft, including, without limitation, all forgeries and misapplications.

(*Id.* ¶25.)

The Dealership argues that the terms of these agreements only allow Firstar to recover fees associated with prosecuting the breach of contract claim against the Dealership. It claims that attorney's fees in this context were minimal because the Dealership stipulated during discovery that it was liable to Firstar for ten of the eleven allegedly improper drafts. The Dealership claims that the bulk of Firstar's attorney's fees were spent litigating claims against Faul and the Faul Group, who were not parties to these agreements, and for claims other than breach of contract. The Dealership therefore contends that an award of attorney's fees and costs is improper.

Firstar counters that the agreements do not limit recovery of attorney's fees to breach of contract claims because the other claims – including the counts brought against Faul and the Faul Group – arise from the same set of operative facts that give rise to the breach of contract claim. The Court agrees. The Dealer Agreement allows Firstar to recover "all losses and expenses . . . in

11

connection with" a breach of that contract. Thus, while a breach of contract triggers this provision, it does not follow that the only legal claim contemplated by this provision is one for breach of contract. Here, the conversion, fraud, fraudulent conveyance, and piercing the corporate veil claims pursued by Firstar all arise from the same set of facts that trigger the Contract provision at issue here. Therefore, an award of attorney's fees is appropriate. *See Berthold Types Ltd. v. Adobe Sys., Inc.*, 186 F. Supp. 2d 834, 836 (N.D. Ill. 2002) (holding that claim under consumer fraud statute arose in connection with an agreement because the operative facts alleged in breach of contract and fraud counts were identical).

Even more convincing is the language in the Dealer Payment Addendum. In this document, the Dealership accepted "full responsibility for . . . all losses or damages . . . arising from the improper use of a draft including, without limitation, all forgeries and misapplications.." This language does not limit the recovery of attorney's fees to those associated with a breach of the contract claim. Firstar's claims are substantially based upon a misapplication of at least ten of its drafts. Even a strict reading of the contracts, as required by Illinois law, shows that Firstar is entitled to an award of attorney's fees under these circumstances.

The Dealership next attacks Firstar's claim for attorney's fees because it claims they are unreasonable. The Dealership does not submit any evidence supporting this contention. Instead, it argues that Firstar must do more than simply present copies of bills to meet its burden of producing sufficient evidence that would allow the Court to make a decision regarding the reasonableness of the fees. Firstar has since cured those deficiencies by seeking – and receiving – leave to supplement the record with Joshua Silverstein's affidavit. (R. 77-1.) The Dealership never sought leave to supplement its arguments after this filing.

12

Silverstein's affidavit notes that Firstar paid its counsel, Freeborn & Peters, at the same rate that the firm charges to its other clients for the same services. The history of this case stretches over two years and involves several motions and supporting memorandums of law, an appeal to the Seventh Circuit, and months of discovery.[3] In light of this, this Court finds that the fees charged were reasonable, and that the Dealership is liable for $203,595.55 in fees and $19,278.10 in costs.

## V.     Plaintiff Is Entitled To Prejudgment Interest

Firstar claims it is entitled to prejudgment interest with respect to the improper drafts and the loss of interest payments. The Court agrees. Illinois law allows a plaintiff to receive prejudgment interest at five percent per year where a defendant has received and used plaintiff's money without its knowledge. 815 ILCS 205/2. In order for the interest to attach, the amount owed must be fixed or easily computed. *Kansas Quality Constr., Inc. v. Chiasson*, 250 N.E.2d 785, 789 (Ill. App. Ct. 1969). The decision to award such interest is within the sound discretion of the court. *Bank of Chicago v. Park Nat'l Bank*, 660 N.E.2d 19, 23 (Ill. App. Ct. 1995).

The amount the Dealership owed for the improper drafts was fixed at the precise moment each was deposited by the Dealership. Likewise, the Dealership owed Firstar a fixed amount for its unearned commissions due to lost interest payments when customers terminated the contracts. Although these terminations occurred at various times and the amount became due separately, the debt can still be deemed fixed. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d

---

[3] In the Seventh Circuit, a reasonable hourly rate for attorneys is "the rate that lawyers of a similar ability and experience in the community normally charge their paying clients." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir.1993). *See also Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that the starting point for the calculation of attorney's fees is the "lodestar" amount, or the product of the number of hours reasonably expended and a reasonable hourly rate). The Dealership does not develop an argument that the attorney's fees are improper under this Lodestar calculation.

518, 519 (7th Cir. 1999) (awarding prejudgment interest as it pertained to attorney's fees that accumulated during the case). Further, the unearned commission for each is easily calculated.

Firstar is not entitled to prejudgment interest, however, related to the entire amount owed on the drafts and the loss of interest payments. It has already offset a portion of the money by withholding some payments due to the Dealership. The Court finds that Firstar is entitled to prejudgment interest, but that interest must be calculated with respect to the withholding of payments and the dates that each loss of interest payment accrued. The Court does not have sufficient facts to calculate the award. Firstar and the Dealership should attempt to determine the proper prejudgment interest and are instructed to submit a stipulated order to the Court when they can agree on the figure. Prejudgment interest will continue to accrue until that stipulated order is filed.

## CONCLUSION

Plaintiff's motion for partial summary judgment against the Dealership with respect to Counts II, III and VI is granted. Plaintiff is entitled to a payment of $497,581.56 plus prejudgment interest. The Dealership is ordered to pay Firstar $269,547.93 for the improper drafts, $38,324.02 for the dishonored checks, $120,928.85 for the lost interest payments, $203,595.55 in attorney's fees, and $19,278.10 in costs. This amount is ordered to be reduced by $154,092.89 for the amount Firstar previously withheld from the Dealership. Firstar is also entitled to prejudgment interest, but the parties must submit a stipulated order that calculates the amount of prejudgment interest available consistent with this opinion.

Dated: February 24, 2003

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge